UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| MAGDELENA K. PAMPALLONA | § |
| | § |
| v. | §  CIVIL NO. 4:25-CV-161-SDJ |
| | § |
| NEWREZ, LLC d/b/a SHELLPOINT | § |
| MORTGAGE SERVICES, LLC f/k/a | § |
| SPECIALIZED LOAN SERVICING, | § |
| LLC, ET AL. | § |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff Magdelena K. Pampallona's Motion to Remand. (Dkt. #4). Defendants Newrez, LLC and Park Place Securities, Inc. filed a response in opposition. (Dkt. #11). After considering the motion, Defendants' response, the record, and the applicable law, the Court concludes that the remand motion should be denied.

**I. BACKGROUND**

In 2004, Pampallona took out a mortgage loan secured by a deed of trust on her home at 507 South McDonald Street in McKinney, Texas. (Dkt. #2 ¶¶ 5.3–5.4). The original issuer of the loan later assigned it to Park Place Securities, Inc., with U.S. Bank National Association serving as trustee. (Dkt. #2 ¶¶ 5.4, 5.27).

After a fire gutted the property, Pampallona's insurer issued a payment of $140,800 to Newrez, LLC, the mortgage servicer. (Dkt. #2 ¶ 3.2); (Dkt. #11 at 2). At that time, Pampallona still owed roughly $110,000 on her mortgage. (Dkt. #4 ¶ 8). Pampallona alleges that the insurance proceeds should have first been applied to the balance of the loan, and then any surplus should have been returned to her. Instead,

1

she alleges, Newrez refused to apply the insurance payment to the loan, refused to return the surplus, and demanded that she continue to pay down the mortgage balance. (Dkt. #2 ¶ 3.2).

Pampallona filed this lawsuit in Texas state court. She seeks, among other things, a declaratory judgment that Defendants "should have applied the funds issued by Plaintiff's insurance company to the remaining balance of Plaintiff's mortgage loan and then released the remainder of the funds into the possession and control of the Plaintiff." (Dkt. #2 ¶ 11.3.9). She also seeks "specific performance of the Mortgage Loan Agreement by [Defendants], such that [they] are ordered by the Court to timely and speedily release the loss draft funds, allow application of such funds to the balance of Plaintiff's mortgage loan, and that the remaining funds being owed to Plaintiff be release[d] post haste." (Dkt. #2 ¶ 16.1).

Defendants then removed the case to this Court based on diversity jurisdiction. (Dkt. #1, #5). Pampallona now moves to remand the case back to state court, arguing that the $75,000 amount in controversy requirement for diversity jurisdiction is not met. (Dkt. #4). Specifically, Pampallona argues that the amount in controversy is her actual damages of approximately $30,000—the difference between the $140,800 insurance payment and her $110,000 mortgage balance. (Dkt. #4 at 3–4). Defendants respond that the entire $140,800 is in controversy because Plaintiff seeks "a declaratory judgment directing the disbursement of [the full] $140,800 of insurance proceeds." (Dkt. #11 at 4).

2

## II. Legal Standard

A defendant may remove a case based on diversity jurisdiction when the suit is between citizens of different states and the amount in controversy exceeds $75,000, excluding interest and costs. 28 U.S.C. § 1332(a). To meet the amount in controversy requirement, the defendant can either show that it is "facially apparent" that the claims exceed $75,000 or offer specific facts supporting the same. *Guijarro v. Enter. Holdings, Inc.*, 39 F.4th 309, 314 (5th Cir. 2022). If the plaintiff challenges such a showing, both sides may submit evidence, and the court must decide—by a preponderance of the evidence—whether the amount in controversy crosses the jurisdictional threshold. *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 88, 135 S.Ct. 547, 190 L.Ed.2d 495 (2014). Even so, courts resolve all doubts against removal and favor remand. As the Fifth Circuit has explained, "[t]he removal statute is . . . strictly construed, and any doubt about the propriety of removal must be resolved in favor of remand." *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007).

When the plaintiff seeks declaratory or injunctive relief, in addition to actual damages, courts measure the amount in controversy by the value of the litigation's object. *Allstate Fire & Cas. Ins. Co. v. Love*, 71 F.4th 348, 352 (5th Cir. 2023) (citing *Hunt v. Wash. St. Apple Adver. Comm'n*, 432 U.S. 333, 347, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977); *Frye v. Anadarko Petroleum Corp.*, 953 F.3d 285, 293 (5th Cir. 2019)). "In other words, the amount in controversy in such actions is the value of the right to be protected or the extent of the injury to be prevented." *Love*, 71 F.4th at 352 (cleaned up). Value is determined "from the perspective of the plaintiff, and the proper

measure is the benefit to the plaintiff, not the cost to the defendant." *Turnage v. Chase Home Fin., LLC*, No. 1:10-CV-216, 2010 WL 11530719, at *5 (E.D. Tex. July 2, 2010) (cleaned up).

### III. Discussion

Here, the value of the litigation's object, from Pampallona's perspective, is at least $140,800—the full amount of the insurance payment. It is not merely $30,000, as Pampallona suggests. Should Pampallona succeed in this action, her benefit would be twofold: First, she would receive approximately $30,000 in actual damages—that is, the amount of the insurance payment minus the amount currently owed on her mortgage. *See* (Dkt. #2 ¶ 16.3(b)). Second, she would receive approximately $110,000-worth of equity in her home. *See* (Dkt. #2 ¶ 16.1).

Pampallona disputes the second of these two benefits, apparently arguing that only actual-damage claims count toward the amount in controversy requirement. *See* (Dkt. #4 at 3–4). But that is not the law. *See Frye*, 953 F.3d at 293 (holding that the amount in controversy includes the value of declaratory and injunctive relief). If Pampallona wins here, Defendants will be required to apply $110,000 of the insurance payment to the outstanding balance of Pampallona's mortgage loan. From Pampallona's perspective, the benefit of this injunctive relief is an additional $110,000-worth of equity in her home. Courts considering similar circumstances have found the same. *See, e.g., Miller v. Chase Home Fin., LLC*, No. CIV.A.08-0575, 2008 WL 4435824, at *2 (W.D. La. July 25, 2008) (finding that plaintiff's "mortgage indebtedness" was in controversy where plaintiff challenged defendant mortgage company's refusal to apply insurance payment to plaintiff's mortgage balance).

As a last-ditch argument for remand, Pampallona suggests that Defendants may have applied "*at least some* of the insurance funds" to her mortgage balance "[s]ince the Removal was filed." (Dkt. #4 at 4) (emphasis in original). This, she says, merely underscores that the amount in controversy "has always been, and is, . . . significantly less than $75,000." (Dkt. #4 at 4). To the contrary, this is irrelevant because post-removal events that reduce the amount in controversy do not divest the Court of diversity jurisdiction. *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000).

In sum, the amount in controversy is at least $140,800, which exceeds this Court's jurisdictional minimum. Because Defendants have also established that the parties are completely diverse, (Dkt. #5 ¶ 11), the Court has subject-matter jurisdiction, and Pampallona's motion to remand must be denied.

## IV. Conclusion

For these reasons, Plaintiff Magdelena K. Pampallona's Motion to Remand, (Dkt. #4), is **DENIED**.

**So ORDERED and SIGNED this 10th day of October, 2025.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE